JAMES M. MILLER, Plaintiff-Appellant, *v.* VERSON ALLSTEEL PRESS COMPANY, Defendant-Appellee.

First District (1st Division)   No. 83—1689

Opinion filed July 30, 1984.

BUCKLEY, J., dissenting.

Beermann, Swerdlove, Woloshin, Barezky & Berkson and Goldstein, Goldberg & Fishman, both of Chicago (Alvin R. Becker and Steven P. Garmisa, of counsel), for appellant.

Schwartz & Freeman, of Chicago (Mark L. Hellner and William D. Kelly, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This is a personal injury action based upon strict liability in tort against the manufacturer of a punch press. Plaintiff, James M. Miller, injured his hands while operating a punch press manufactured by defendant, Verson Allsteel Press Company, Inc., and sold to plaintiff's employer, Equipto. The circuit court granted summary judgment in favor of defendant and plaintiff now appeals arguing: (1) that summary judgment was improper where genuine issues of material fact exist as to the unreasonably dangerous condition of defendant's product; and (2) that the supreme court case, *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232, is not controlling in this case.

The record discloses that plaintiff was injured on August 30, 1977, while operating a 200-ton punch press manufactured by defendant and purchased by plaintiff's employer in 1974. As sold by defendant, the punch press was equipped with certain general safety devices. Defendant submitted deposition transcripts to establish that its punch press was multifunctional and that the purchaser would decide the type of specific safety device to be used, depending upon the task to be performed.

Plaintiff testified at his deposition that he had been the sole operator of the press for four to five years prior to the accident. At the time of the injury, plaintiff was forming shelves from blank metal stock by laying the metal on the die and activating the press to bend up the four corners of the metal. To perform the operation, plaintiff placed his hands between the pinch point created between the upper and lower dies. To pull the operator's hands out of the danger area as the press closed, plaintiff's employer installed a pullback safety device on the press. Proper use of the pullback device, which was attached to the operator's wrists, required careful adjustment of the reach by a co-worker. On the morning of the accident, plaintiff's co-worker, Ralph Schmidt, adjusted the pullback device at the plaintiff's request.

In his deposition, Ralph Schmidt testified that on the morning of plaintiff's injury plaintiff twice broke the die on the press, and after plaintiff fixed the dies the pullback guard was not readjusted. According to Schmidt, the pullback guard would only be adjusted at the operator's request. Following the accident, Schmidt observed that two mangled metal pieces were jammed in the die and that the lower die shelf was at an angle due to plaintiff's failure to align it properly.

James Walters, the general foreman at Equipto, testified at his deposition that an inspection of the press following the accident showed that the pullback device had been maladjusted, and accordingly, the operator's hands could be caught in the pinch point. Walters fur-

ther testified that after the accident, Equipto changed its procedure with regard to the adjustment of the pullback device so that an operator's reach would be further removed from the pinch point than plaintiff's had been. Additionally, according to Walters, as a result of plaintiff's injury Equipto installed an electric eye light shield on the press to prevent the press from operating when the operator's hands were in the danger area.

Gary Pennington, safety director at Equipto, testified at his deposition that he prepared a report on the accident to the Occupational Safety and Health Association. In the report, Pennington stated that in his opinion, if the pullback device had been properly adjusted and thereby functioning properly, plaintiff could not have been injured.

Plaintiff first contends that the trial court erred in entering summary judgment since a material issue of fact exists as to whether or not plaintiff's injuries were proximately caused by the alleged unreasonably dangerous condition of defendant's product. Plaintiff claims that the punch press was unreasonably dangerous when it was manufactured and sold by defendant because it lacked an electric eye safety device which would have prevented the press from operating when plaintiff's hands were in the danger area. Plaintiff notes that defendant's own evidence established that an electric eye safety device was added to the press following plaintiff's injury. Plaintiff argues that "[r]esolution of the question whether a product is unreasonably dangerous for failure to incorporate safety devices is the function of the jury as trier of fact." (*Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 897, 394 N.E.2d 825, 831.) Moreover, plaintiff argues that defendant is not relieved of liability simply because there is evidence that the negligence of a co-worker was a concurrent or intervening cause of plaintiff's injuries. There may be more than one proximate cause of an injury (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242), and if two wrongful acts concurrently cause an injury, both wrongdoers can be held liable for the injury. (*Berg v. New York Central R.R. Co.* (1945), 391 Ill. 52, 62 N.E.2d 676.) Consequently, "[t]he defect in the product need not be the *sole* cause of plaintiff's injury; a finding that a defect in the [product] was *a* proximate cause of the injury is enough to sustain plaintiff's [claim]." (*Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 251, 417 N.E.2d 154, 161.) Therefore, it is plaintiff's position that whether or not an electric eye device should have been included as part of the original design of defendant's punch press was a matter for the trier of fact since: "In determining what precautions are required, the likelihood of harm and the gravity of harm [must be] balanced against the burden to the manufacturer of taking the precaution which is necessary to avoid the harm or injury."

*Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 45, 404 N.E.2d 1013, 1016.

■ The primary function of the summary judgment procedure is to enable a court to determine whether there is any issue to be tried by a jury. (*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.) Although its use is encouraged (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497), summary judgment is to be granted only where the pleadings, depositions and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) Although the complaint and answer may purport to raise issues of material fact, if those issues are not further supported by evidentiary facts or affidavits, the summary judgment is appropriate. See *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

■ In this case, plaintiff had the affirmative duty to show that defendant's failure to include an electric eye safety device on its press was the proximate cause of plaintiff's injuries. (See *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184.) Plaintiff filed no depositions, affidavits, admissions or any other evidence to show that defendant's product was in an unreasonably dangerous condition when it was put into the stream of commerce. In fact, plaintiff failed to present any evidence regarding the proposed electric eye safety device. On the other hand, the court did have before it the following uncontroverted facts to consider: that the press was a multifunctional machine and the type of safety device to be installed would depend upon the particular function to be performed; that the press was equipped with certain safety devices when it left defendant's control; that plaintiff's employer equipped the press with a safety device; and that on the day of the accident the safety device had been improperly adjusted by plaintiff's co-worker. Plaintiff's failure to file any counteraffidavits in effect constitutes admission of the facts as presented by defendant, and plaintiff's unverified complaint, alleging that defendant's failure to install an electric safety device was a proximate cause of plaintiff's injury, was insufficient to raise a triable issue of fact. (See *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) Because plaintiff failed to submit any evidence to satisfy his burden of proving that an unreasonably dangerous condition existed at the time the press left defendant's control which proximately caused his injury, we find no error in the trial court's entry of summary judgment in favor of defendant.

Plaintiff also argues that the supreme court case, *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232, is not

controlling in this case. In *Rios*, the plaintiff was injured while operating a punch press which had been sold without safety devices. The plaintiff's employer, however, had installed a pullback safety device on the press which malfunctioned and caused plaintiff's injuries. The plaintiff alleged in his complaint that the press was unreasonably dangerous because it was sold without safety devices. The court held that any unreasonably dangerous conditions which existed when the machine left the manufacturer's control were fully corrected by the employer's addition of a safety device and the failure of the device caused plaintiff's injuries. The court affirmed the reversal of a jury verdict for plaintiff on the ground that there was no evidence of a causal connection between the plaintiff's injuries and the condition of the machine.

Plaintiff claims that *Rios* is distinguishable from the instant case because the complaint in that case did not refer to an electric eye device among the safety devices which should have been included on the punch press and also because the *Rios* press was manufactured in 1956 when the state of the art may have prevented the equipping of presses with a device, like the electric eye shield, which would render the press safe in all of its intended functions. According to plaintiff, defendant had the burden of establishing that the state of the art prevented it from providing safety devices which would have eliminated the risk of harm to punch press operators during each function of the product.

The *Rios* case was relied upon by defendant in its motion for summary judgment and the trial court apparently found the case to be persuasive in granting defendant's motion. It is well established that the plaintiff in a strict liability action has the burden of proof to plead and prove every fact necessary to sustain his cause of action. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) The burden requires that the plaintiff prove "that [his] injury *** resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) The burden is not on defendant, as claimed by plaintiff, to prove that the state of the art prevented the installation of a safety device such as the electric eye shield. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) As in the *Rios* case, plaintiff here has failed to set forth any evidence which would show a causal connection between his injuries and the condition of the press at the time it left defendant's control. Because plaintiff offers no further reasons for distinguishing the *Rios* case, and we perceive of none, we see no error in the trial court's reliance on that case.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GOLDBERG, J. concurs.

Dissenting Opinion Upon Denial Of Rehearing

PRESIDING JUSTICE BUCKLEY, dissenting:

Upon consideration of plaintiff's petition for rehearing, I withdraw my concurrence in the majority opinion and respectfully dissent.

In my opinion, the record before us fails to support the granting of summary judgment for defendant. Plaintiff in his complaint alleged, among other things, that defendant's product was unreasonably dangerous because it was placed in the stream of commerce without having an electric eye safety device. Defendant, in its motion for summary judgment, completely avoided this particular allegation and instead merely presented evidence that *a* proximate cause of plaintiff's injury was improper adjustment of a pullback safety device. Despite defendant's failure to present any evidence that the absence of an electric eye safety device was not a concurrent proximate cause of his injury, the trial court granted summary judgment for defendant. In affirming the lower court, the majority focuses on plaintiff's failure to file any counteraffidavits, holding that "plaintiff had the affirmative duty to show that defendant's failure to include an electronic eye safety device on its press was *the* proximate cause of plaintiff's injuries."

I respectfully submit that the above holding conflicts with existing Illinois case law, in particular our recent decision in *Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 464 N.E.2d 634. In *Harris*, as in the case before us, plaintiff filed a strict liability action alleging several factual bases for finding that defendant's product was unreasonably dangerous. The defendant moved for summary judgment and, in support thereof, produced deposition testimony which was directed at only one of the alternative bases for recovery alleged in the complaint. Plaintiff filed no evidentiary documents in opposition, and summary judgment was entered in favor of defendant. Despite plaintiff's failure to produce any evidence in opposition to the motion for summary judgment, this court reversed the trial court's granting of summary judgment for defendant. We held that since the defendant presented evidence as to only one of the complaint's alternative bases for recovery, it was improper to enter summary judgment for defendant on the alternative grounds which were not attacked, reasoning as follows:

"If the party moving for summary judgment supplies eviden-

tiary facts which, if uncontradicted, would entitle him to judgment, the opposing party cannot rely on his pleadings alone to raise issues of material fact. (*In re Estate of Garbalinski* (1983), 120 Ill. App. 3d 767, 770, 458 N.E.2d 1065.) Nonetheless, even though the party opposing the motion fails to file counteraffidavits, the movant should not be awarded summary judgment unless the affidavits establish the right to a judgment as a matter of law. (*Spancrete of Illinois, Inc. v. Brickman* (1979), 69 Ill. App. 3d 571, 576, 388 N.E.2d 47.) Thus, the consequence of failing to file counteraffidavits is that the statements in the affidavits supporting the motion stand as admitted. (*Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 541, 458 N.E.2d 575.) *It therefore follows that the statements in the affidavits relied upon as justifying summary judgment must avoid the theories of recovery set forth by the complaint."* (Emphasis added.) (124 Ill. App. 3d 449, 454.)

We further noted that prior appellate court decisions should not be "mischaracterize[d] *** as placing the burden upon the opponent of a summary judgment motion to 'come forward with *facts, proof*, supporting *all* of the allegations of the complaint.' " 124 Ill. App. 3d 449, 455-56.

In the instant case, the lack of an electric eye safety device was only one of the alternative grounds for recovery alleged in the complaint. Thus, under the above precedent, to obtain summary judgment the defendant had the burden of producing documentary evidence which would establish that lack of an electric eye safety device was not a concurrent proximate cause of plaintiff's injuries. Since defendant failed to set forth such evidence, it was improper to grant summary judgment in its favor. Contrary to the majority's holding in this case, plaintiff had no duty to present evidence to support unattacked theories. 124 Ill. App. 3d 449, 455-56.

I further disagree with the majority's discussion of *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232. The majority found that it was proper to apply *Rios* to the present case because "plaintiff here has failed to set forth any evidence which would show a causal connection between his injuries and the condition of the press at the time it left defendant's control." This finding, however, fails to consider *all* of the evidence in the record before us. Deposition testimony submitted by defendant in support of its motion for summary judgment reveals that following plaintiff's injury his employer installed an electric eye safety device on the punch press involved in the occurrence and that this device prevents the punch press from operating when the operator's hands are in the zone of danger. It is held that evidence of

post-accident modifications or repairs is admissible in strict liability cases, and such evidence of a possible alternative design can be used to establish that there was an unreasonably dangerous design defect in a product. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 163, 369 N.E.2d 1284.) It was improper not to consider the foregoing evidence merely because it was introduced by defendant rather than plaintiff. "In determining whether there exists a genuine issue of material fact, the court considers the entire record and construes the evidence strictly against the moving party and liberally in favor of the opponent." *Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 453, 464 N.E.2d 634.

Taking the evidence in the present case and construing it in the light most favorable to plaintiff, I believe there exists a genuine issue of fact as to whether the lack of an electric eye safety device was a proximate cause of plaintiff's injuries and, therefore, summary judgment in defendant's favor was inappropriate.