LA SALLE NATIONAL BANK, as Trustee under Trust No. 109529, Plaintiff-Appellant, v. MEL VEGA *et al.*, Defendants-Appellees (Jerold A. Borg, Counterplaintiff-Appellee; La Salle National Bank, as Trustee under Trust No. 109529, *et al.*, Counterdefendants).

Second District No. 2—87—0622

Opinion filed March 3, 1988.—Rehearing denied April 12, 1988.

Lawrence M. Freedman, of Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, of counsel), for appellant.

Michael C. Wiedel, of Bowers, Carney, Wiedel & Slansky, of Downers Grove, and Charles F. Haverty III, of Brady, McQueen, Martin, Collins & Jensen, of Elgin (Wiley W. Edmondson, of counsel), for appellee Jerold A. Borg.

Hartman E. Stime, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for other appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, La Salle National Bank, as trustee under Trust No. 109529, appeals from two June 22, 1987, orders of the circuit court of Du Page County. The first order granted the motion of counterplaintiff, Jerold A. Borg (Borg), for partial summary judgment. It also entered judgment on plaintiff's first amended complaint in favor of defendants, Paul Vega (Paul), as trustee under the Mel Vega Trust; Paul Vega, as independent administrator of the decedent's estate of Mel Vega (Mel); and Richard Vega (Richard), as trustee under the Marie Vega Trust. The second order denied plaintiff's petition for rehearing and dismissed both counts of plaintiff's first amended complaint (without vacating the portion of the first order entering judgment for defendants on both counts of the same first amended complaint).

Plaintiff's first amended complaint alleged the existence of a contract for the sale of real estate between it and Mel and sought specific performance of the alleged contract and damages from defendants for willfully and intentionally breaching it. Borg was permitted to intervene and filed a counterclaim naming plaintiff and defendants as counterdefendants. As finally amended, the counterclaim sought specific performance of a different contract for sale of the same real estate to Borg; a judgment declaring the alleged contract between Mel and plaintiff void and holding it for naught; and, if the alleged contract with plaintiff was "held to be a valid and enforceable contract," damages from defendants for fraud for failure to disclose the contract with plaintiff to Borg.

Borg moved for partial summary judgment (Ill. Rev. Stat. 1985,

ch. 110, par. 2—1005(d)) requesting a determination by the court that the alleged contract between plaintiff and Mel was unenforceable because it was not "signed in accordance with its terms and provisions" and because plaintiff abandoned it. The trial court granted partial summary judgment on the basis of the first ground argued by Borg.

In its verified first amended complaint, plaintiff alleged, *inter alia*:

"The Defendant, MEL VEGA, on March 12, 1985, in his own behalf and in behalf of all the owners of record, entered into a Real Estate Sale Contract (herein 'Contract') with the Plaintiff, a true and correct copy of said Contract is attached hereto and incorporated herein as Exhibit A."

Exhibit A is a document, drafted by counsel for plaintiff, entitled "Real Estate Sale Contract." On the first page of this document appears the date March 12, 1985, and the statement that "Attached Rider is part of this Contract." One of the Rider's provisions states:

"This contract has been executed and presented by an authorized agent for the purchaser, the beneficiaries of the La Salle National Bank, under Trust No. 109529, as Trustee aforesaid for the benefit of the Trust only and not personally. Upon execution of this contract by the Seller, this contract shall be presented to the trust for full execution. Upon the trust's execution, this contract will then be in full force and a copy of a fully executed contract along with evidence of the earnest money deposit will be delivered back to Seller."

The document was signed by Bernard Ruekberg as the purchaser's purchasing agent and by Mel Vega (on March 19, 1985, according to the date by his signature on the Rider) as the seller but not by the trustee for the purchaser.

James Clark, an assistant vice-president in plaintiff trustee's land trust department, gave a deposition. Clark testified that there was no copy of the March 1985 contract in the relevant land trust file. Moreover, the real estate record kept by the department, which was intended to be a complete record of every document executed by the trustee (except for check endorsements), did not contain any notation of the presentation to, or the execution by, the trustee of the March 1985 contract. The trust in question was one for the Alter Group, and Clark estimated that there were 125 open trust files for the Alter Group at that time. It was conceivable that the March 1985 document had been executed and misfiled. However, counsel for plaintiff had never requested that Clark search other trust files for an executed copy of the document and had never suggested that a contract was

missing from the file. On Borg's counsel's request, Clark had searched the trust department for any missing document and was unable to locate any missing contract.

Realtor Phil Bowers testified in his deposition that he had a notation that he had gone back to Mel on March 26, 1985. Bowers believed that he had then delivered to Mel an executed trust copy of the March 1985 document. However, Bowers did not have a copy of that executed document and, in fact, neither plaintiff nor any of the other deposed witnesses produced a copy of that executed document.

The trial court found, *inter alia*:

"1. That the alleged 'Contract' which forms the basis of the claim of Plaintiff *** is identified as Exhibit 'A' of its First Amended Complaint.

2. That the [document] contains language which provides in pertinent part ***:

'Upon execution of this Contract by the Seller, this Contract shall be presented to the trust for full execution. Upon the trust's execution, this Contract will then be in full force and a copy of a fully executed Contract along with evidence of the earnest money deposit will be delivered back to Seller.'

3. That the aforesaid language is, on its own face, clear and unambiguous.

4. That the only reasonable inference to be drawn from the aforesaid language is that in the event that the Contract is not signed by the Trustee, it never will come into full force.

5. That the alleged 'Contract' identified as Exhibit 'A' to Plaintiff's First Amended Complaint was not signed by the Trust.

6. That because the aforesaid language contained in Exhibit 'A' to Plaintiff's First Amended Complaint requires the signature of the Trust for the 'Contract' to be in full force and because the 'Contract' was not signed by the Trust, therefore, no Contract was ever formed between Mel Vega and Plaintiff *** ."

The court accordingly granted partial summary judgment for Borg and entered judgment in favor of defendants on plaintiff's complaint.

■■ The parties' statements of the issues are not very informative. It suffices here to note that they make arguments concerning whether there was a genuine issue as to a material fact in essentially two respects: (1) whether a contract between plaintiff and Mel was ever formed and (2) whether, if a contract was formed, it was nonetheless unenforceable. We believe that the trial court correctly held

that there was no genuine issue as to any material fact that no contract was ever formed between plaintiff and Mel. The arguments concerning whether, if a contract was formed, it was unenforceable because of the Statute of Frauds and because it was abandoned by plaintiff therefore need not be addressed.

■ Summary judgment may be granted only when no genuine issue of material fact exists. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636, 502 N.E.2d 1295, 1297.) Whether there is a genuine issue of material fact is determined from the pleadings, depositions, affidavits, and admissions on file in a case. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636, 502 N.E.2d 1295, 1297-98.) Summary judgment should be granted only where, when construed most strongly against the movant, the evidence clearly and with no doubt establishes the movant's right thereto. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636, 502 N.E.2d 1295, 1298.) In the case at bar these requirements were satisfied with respect to the issue of whether a contract was formed between plaintiff and Mel.

■ It has long been settled that a contract is " 'an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing.' " (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639, quoting *People v. Dummer* (1916), 274 Ill. 637, 640, 113 N.E. 934, 935.) The formation of a contract requires an offer, an acceptance, and consideration. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329-30, 371 N.E.2d 634, 639; *Milanko v. Jensen* (1949), 404 Ill. 261, 266-67, 88 N.E.2d 857, 859.) The trial court held that there was no genuine issue of material fact that no contract was formed because the offer was made by Mel, the offer could only be accepted by execution of the document at issue by the trust, and the document was not executed by the trust. Plaintiff argues that the trial court erred because there were genuine issues of material fact regarding whether the document was ever executed by the trust and whether execution of the document by the trust was necessary to the formation of a contract. Plaintiff is incorrect on both of these points.

■ Plaintiff's assertion that there was a genuine issue of material fact concerning whether the document was executed by the trust is incorrect for two reasons. The first reason it is incorrect is that plaintiff's claim is founded upon a written instrument, *i.e.*, the alleged contract between it and Mel. Therefore, as required by the Code of Civil Procedure, plaintiff attached a copy of the document to its complaint as an exhibit. (Ill. Rev. Stat. 1985, ch. 110, par. 2—606.) The docu-

ment on which plaintiff has founded its claim is therefore the one attached as an exhibit to its complaint, which was executed by Ruekberg and Mel but not by the trust. If plaintiff were founding its claim upon a written instrument which was executed by the trust, it should have attached to its complaint either a copy of that document as an exhibit or "an affidavit stating facts showing that the instrument is not accessible to [plaintiff]." (Ill. Rev. Stat. 1985, ch. 110, par. 2—606.) On the complaint filed, accordingly, there was no issue as to the execution of the document by the trust.

■ The second reason plaintiff is incorrect about there being a genuine issue as to whether the trust executed the document is that plaintiff's verified amended complaint states that the exhibit attached is a "true and correct copy" of the written instrument on which the claim of plaintiff is founded. None of the other parties in their pleadings denied that the exhibit was a "true and correct copy" of the instrument, but rather contended that they should prevail for various other reasons. As previously noted, the exhibit showed that the document was executed by Ruekberg and Mel, but did not show execution by the trust. The rule is:

> "Once a statement of fact has been admitted in the pleadings, it constitutes a judicial admission and makes it unnecessary for the opposing party to introduce evidence in support thereof. [Citations.] In *Precision Extensions, Inc. v. Stewart* [(1962), 36 Ill. App. 2d 30, 183 N.E.2d 547], the court stated:
> 'Judicial admissions are not evidence at all, but are formal admissions in the pleadings, *** which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' (36 Ill. App. 2d 30, 50, 183 N.E.2d 547, 556.)
> When the admission is made in a verified pleading, it remains binding upon the pleader even after an amendment. [Citations.]" *(Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 958-59, 376 N.E.2d 621, 625.)

In the case at bar, plaintiff judicially admitted that the copy of the document, not executed by the trust, was a true and correct copy of the written instrument on which its claim was founded. This withdrew from issue the question of whether the trust executed the document and dispensed with the need to prove that the trust had not.

Whether a contract was formed without execution of the document by the trust may now be considered. This requires first an analysis of the events which occurred with respect to the document in terms of offer and acceptance.

The pertinent provision of the document stated:

"This contract has been executed and presented by an authorized agent for the purchaser, the beneficiaries of the La Salle National Bank, under Trust No. 109529, as Trustee aforesaid for the benefit of the Trust only and not personally. Upon execution of this contract by the Seller, this contract shall be presented to the trust for full execution. Upon the trust's execution, this contract will then be in full force and a copy of a fully executed contract along with evidence of the earnest money deposit will be delivered back to Seller."

Thus, a specific order of events was contemplated, after which the contract would be in full force. Ruekberg (the purchasing agent) was to execute the document and present it to Mel (the seller). Then Mel was to execute it. After Mel executed it, the document was to be presented to the trust for execution. Finally, "upon the trust's execution," the contract would be in full force.

■■ An offer is an act on the part of one person giving another person the legal power of creating the obligation called a contract. (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 507, 411 N.E.2d 936, 942.) Where "the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer." (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 508, 411 N.E.2d 936, 943.) From the provisions contained in the document at bar, particularly the language quoted, it is apparent that there was to be no contract (*i.e.*, the "contract" was not to be in full force) until it was executed by the trust. Thus, Ruekberg's presentation of the document he had executed to Mel was not an offer because it did not give Mel the power to make a contract by accepting it. On the other hand, when Mel executed the document and gave it back to Ruekberg he made an offer which could be accepted by execution of the document by the trust.

■■ An offeror has complete control over an offer and may condition acceptance to the terms of the offer. (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 509, 411 N.E.2d 936, 944.) The language of an offer may moreover govern the mode of acceptance required, and, where an offer requires a written acceptance, no other mode may be used. (*Zeller v. First National Bank & Trust Co.* (1979), 79 Ill. App. 3d 170, 172, 398 N.E.2d 148, 150; *Nationwide Commercial Co. v. Knox* (1973), 10 Ill. App. 3d 13, 15, 293 N.E.2d 638, 640; *Brophy v. City of Joliet* (1957), 14 Ill. App. 2d 443, 453-56, 144 N.E.2d 816, 821-23.) In the case at bar, the document at issue stated clearly that the contract would be in full force upon the trust's execu-

tion. This indicates that the only mode by which Mel's offer could be accepted was execution of the document by the trust. The trust not having executed the document, there was no acceptance of the offer, and so there was no contract. *E.g., Zeller v. First National Bank & Trust Co.* (1979), 79 Ill. App. 3d 170, 172, 398 N.E.2d 148, 149 ("It is elementary that for a contract to exist, there must be an offer and acceptance. [Citations.]"); *Moore v. Lewis* (1977), 51 Ill. App. 3d 388, 392, 366 N.E.2d 594, 599 ("[A]n offer does not ripen into a contract until it is accepted").

■ Several contentions of plaintiff remain to be briefly addressed. Plaintiff argues that the beneficiaries to a land trust may contract and bind the trust; that Ruekberg was an agent of the beneficiaries; and that therefore Ruekberg could enter into a contract binding on the trust. Accordingly, the trust's execution was unnecessary to form a contract, but rather Ruekberg's execution as agent of the beneficiaries was sufficient. This is incorrect. Assuming *arguendo* that Ruekberg could enter into contracts which would bind the trust, the document at issue nonetheless could not become a contract on Ruekberg's and Mel's execution alone. This is because the document specifically provided that it would not be in force until executed by the trust and so (1) was not an offer until Mel executed it and (2) could only be accepted by execution by the trust.

■ Plaintiff argues that "[t]here may have been a mistaken understanding of the need for the Trustee's signature under Illinois law, considering the ability of beneficiaries to bind the Trust." We do not believe that the document can be so read. Moreover, we do not believe that the document's language, which appears to have been chosen with care, should be judicially redrafted on the assumption that the parties were mistaken as to the law. See *Jursich v. Arlington Heights Federal Savings & Loan Association* (1982), 110 Ill. App. 3d 847, 853, 441 N.E.2d 864, 868 ("[T]he erroneous interpretation of a contract constitutes a mistake of law [citation], for which the law affords no remedy. [Citation.]").

■ Plaintiff also makes arguments regarding whether the contract was "mutually enforceable" or lacked "mutuality of obligation." Mutuality of obligation is not at issue in this case, where the document was not a contract because there was no acceptance and not because of a failure of consideration. (*S. J. Groves & Sons Co. v. State of Illinois* (1982), 93 Ill. 2d 397, 404, 444 N.E.2d 131, 134 ("If the requirement of consideration has been met 'mutuality of obligation is not essential.' [Citations.]"), *rev'd on other grounds, Rossetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 485 N.E.2d

332.) In connection with its argument on mutuality of obligation, plaintiff cites three cases for the proposition that bringing the action at bar for specific performance bound plaintiff and rendered the "contract" mutual. (*Laegeler v. Bartlett* (1957), 10 Ill. 2d 478, 140 N.E.2d 702; *Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482; *Cottom v. Kennedy* (1986), 140 Ill. App. 3d 290, 488 N.E.2d 682.) None of these cases stand for the proposition that an offer may be accepted by filing suit for specific performance, let alone that an offer requiring some other mode of acceptance may be accepted by filing suit for specific performance. Since the basic defect in plaintiff's claim that the document was a contract is that there was no acceptance, the cases noted, which do not concern that element of a contract, do not alter the conclusion that there was no contract between plaintiff and Mel.

The judgment of the circuit court of Du Page County is accordingly affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.